UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Javece Wilson, | Case No. 0:21-cv-849 (WMW/KMM) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Bureau of Prisons et al., | |
| Respondents. | |

---

This matter is before the Court for a Report and Recommendation on Javece Wilson's Petition for Writ of Habeas Corpus. For the reasons stated below, the Court recommends that Mr. Wilson's Petition be denied and that this action be dismissed with prejudice.

## I. BACKGROUND

**The Residential Drug Abuse Program**

Following enactment of the Violent Crime Control Law Enforcement Act of 1994, which required the Bureau of Prisons ("BOP") to "make available appropriate substance abuse treatment for each prisoner the [BOP] determines has a treatable condition of substance addiction or abuse," the BOP created the Residential Drug Abuse Program (RDAP). 18 U.S.C. § 3621(b). The BOP may reduce an inmate's sentence by up to twelve months as an incentive to complete RDAP. *Id.* at § 3621(e)(2). The

statute requires the BOP to make such programs available for all inmates who are "determined by the [BOP] to have a substance abuse problem" and "willing to participate in a residential substance abuse treatment program." *Id.* at § 3621(e)(5)(b).

RDAP aims to foster an environment where "all inmates work together to create a community that supports pro-social attitudes and behaviors," and to that end requires inmates participating in the program to conform their behavior to a variety of rules and expectations. [*See generally*, ECF No. 14-1 at 31–34]. "Inmates may be removed from the program by the Drug Abuse Program Coordinator because of disruptive behavior related to the program or unsatisfactory progress in treatment." [ECF No. 14-1 at 33].

**Mr. Wilson's Involvement with RDAP**

Mr. Wilson is presently serving a 60-month term of imprisonment at the Federal Correctional Institution in Sandstone, Minnesota, upon completion of which he will serve four years of supervised release. [ECF No. 14-2 at 2]. He enrolled in RDAP in September 2019. [ECF No. 14-3 at 83]. Throughout out his time in RDAP, staff have expressed concerns regarding his attitude and behavior, as well as his lack of conformity to RDAP rules and expectations of responsibility, willingness, caring, humility, honesty, objectivity, and open-mindedness. [*E.g.*, ECF No. 14-3 at 34, 36, 38–42, 58–61, 77–80]. As a result of these concerns, on one occasion RDAP staff replaced the requirement that Mr. Wilson perform a "responsibility check" with a requirement that he complete a poster and receive "community feedback." [ECF No. 14-3 at 59].

In November of 2019, Mr. Wilson underwent psychological testing and was diagnosed with Mild Neurocognitive Disorder Due to Traumatic Brain Injury. [ECF No. 14-3 at 53–57]. In February 2020, RDAP staff confronted Mr. Wilson about a letter he attempted to send that was intercepted by the mail room. In it, he asked the recipient to forward additional included letters to inmates of other federal prisons, in contravention of BOP mailing policy. [ECF No. 14-3 at 38–42]. Staff advised to Mr. Wilson that the content of the letters, as well as the circumvention of BOP mailing policy, did not conform to the rules and expectations of RDAP. Sometime later, staff found several emails from Mr. Wilson which also attempted to circumvent BOP policies. [ECF No. 14-3 at 36]. In March 2020, RDAP staff expelled Mr. Wilson from the program due to numerous behavioral concerns. [ECF No. 14-3 at 23–30].

In August 2020, Mr. Wilson was permitted to re-enroll in RDAP. [ECF No. 14-3 at 7]. However, he later voluntarily signed out, explaining that he would not receive the full incentive for completion of the program due to disruptions from COVID-19. [ECF No. 14-3 at 3]. Mr. Wilson then filed the instant Petition.

In his Petition, Mr. Wilson claims that he was improperly removed from RDAP and therefore precluded from earning time off his sentence by successfully completing the program. Because he is not eligible for early release, he is seeking time off his supervised-release period. He also seeks immediate transfer to a "halfway house." [ECF No. 1 at 8].

3

## II. ANALYSIS

**The Petition**

Mr. Wilson's Petition contains many pages of densely written details, complaints, and questions, surrounding a wide array of topics and events, most of which are immaterial to his habeas claim. For example, he repeatedly asserts that the RDAP staff were not helpful to him, that they failed to consider his perspective in their reports, that the rules were confusing, that staff improperly screened his mail, and that they were uncharitable in their interpretations of his behavior. Nonetheless, from these filings, the Court liberally construes three relevant arguments as to why his Petition should be granted.[1] First, Mr. Wilson argues generally that the BOP's decision to remove him from RDAP was arbitrary, capricious, or an abuse of discretion under the Administrative Procedure Act. [*E.g.*, ECF No. 16 at 9]. Second, Mr. Wilson contends that his expulsion from RDAP violated equal protection because it was motivated by his disabilities and race. [*E.g.*, ECF No. 16 at 9]. Finally, Mr. Wilson argues that the BOP failed to afford him

---

[1] Mr. Wilson also attempts to assert many other theories, including "double jeopardy," "bursting bubble theory," "burden of persuasion," "burden of allegations," and regulations governing the inspection of prison mail, to name a few. [ECF No. 1 at 3, 6–7]. However, these and other similar arguments are not relevant to the issues or posture of this matter, and most of them are unsupported by any discernable argument. Therefore, the Court recommends denying the Petition as to all but the three identifiable claims outlined above.

4

reasonable accommodations for his disabilities under the Rehabilitation Act ("RA").[2] [ECF No. 7 at 1–3]. The Court will address each of these arguments in turn.

### A. The Administrative Procedure Act

Under the Administrative Procedure Act, courts may review a decision made by federal administrative agencies to determine whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," except where that review is otherwise precluded by statute or where the "agency action is committed to agency discretion by law." 5 U.S.C. § 706, 701(a). Unfortunately for Mr. Wilson, the decision he challenges is placed beyond the reach of the APA by statute. Title 18 U.S.C. § 3625 specifically exempts from judicial review under the APA decisions pursuant to §§ 3621–26 regarding individual inmates; courts in this circuit have repeatedly held that this provision means they lack jurisdiction to review such decisions. *E.g.*, *Lipczynski v. Marques*, No. 18-cv-1466 (JNE/BRT), 2018 WL 4956717, at *5 (D. Minn. Sept. 6, 2018); *Simon v. LaRiva*, 16-cv-146 (ADM/TNL), 2016 WL 1626819, at *5 (D. Minn. Mar. 10, 2016); *Desselle v. Fed. Bureau of Prisons*, No. 15-cv-531 (MJD/JJK), 2015 WL 3505209, at *3 (D. Minn. Apr. 30, 2015).

---

[2] Mr. Wilson also brings this argument under the Americans with Disabilities Act ("ADA"). However, the ADA "does not apply to an inmate confined in a federal prison." *Wales v. Trung*, No. 08-cv-39 (JNE/JJK), 2009 WL 4906502, at *10 (D. Minn. Dec. 16, 2009).

5

It is important to note that there are exceptions to the general rule that this Court lacks jurisdiction over claims like Mr. Wilson's: "courts may review BOP decisions made under §§ 3621–26 when the inmate asserts that 'the BOP's action is contrary to established federal law, *violates the Constitution*, or exceeds statutory authority.'" *Vaughn v. Marques*, No. 18-cv-1266 (JRT/HB), 2019 WL 2492777, at *5 (D. Minn. May 15, 2019) (quoting *Berry v. Marques*, No. 18-cv-934 (SRN/TNL), 2018 WL 3750543, at *3 (D. Minn. July 18, 2018)), *report and recommendation adopted*, No. 18-cv-1266 (JRT/HB), 2019 WL 2491959 (D. Minn. June 14, 2019). Therefore, to the extent Mr. Wilson's Petition is construed as seeking review of the BOP's discretionary decision under the APA, his Petition should be denied. However, to the extent Mr. Wilson argues that his expulsion from RDAP was a violation of due process, equal protection, or other federal law, his Petition is reviewable.

B. **Equal Protection**[3]

In an effort to construe Mr. Wilson's Petition favorably, the Court will review it through the lens of a constitutional violation. Mr. Wilson argues that he was removed from RDAP and consequently denied the opportunity to earn time off his sentence, because of his race and disabilities. He mentions multiple times that he was diagnosed with a traumatic-brain-injury-related disability which impaired his cognitive

---

[3] Mr. Wilson also mentions "due process" in his filings. However, even read through the liberal lens afforded to pro se pleadings, he does not actually allege a due process violation. Instead, the gravamen of his claim is equal protection.

6

functioning. [ECF No. 1-2 at 6; ECF No. 7 at 2]. He also argues that he was removed because he is Black, and the program and staff are racially biased. [ECF No. 1 at 3, ECF No. 7 at 4–5].

Some decisions suggest that inmates have no liberty interest in a reduced sentence, that § 3621 does not grant such an interest, and that denial of an early-release benefit is therefore not redressable with a habeas corpus petition. *E.g.*, *Desselle*, 2015 WL 3505209, at *4; *Gibson v. Walton*, 05-cv-2600 (JNE/JSM), 2006 WL 1428274, at *4 (D. Minn. May 23, 2006); *Hernandez v. Lindeman*, 00-cv-1165 (JRT/FLN), 2002 WL 31163074, at *3 (D. Minn. Sept. 24, 2002); *see Staszak v. Romine*, 221 F.3d 1344 (8th Cir. 2000) (unpublished decision) ("[I]nmate's placement at halfway house after completing institutional component of [drug abuse treatment] program did not give rise to liberty interest protected by due process clause."). However, other courts have weighed the merits of § 2241 petitions challenging BOP decisions under § 3621 on equal-protection and due-process grounds. *Vaughn*, 2019 WL 2492777, at *5; *Berry*, 2018 WL 3750543, at *3. Here, even if the Court follows these decisions and reaches the merits of his arguments, Mr. Wilson's Petition should be denied.

"The Equal Protection Clause generally requires the government to treat similarly situated people alike." *In re Kemp*, 849 F.3d 900, 909 (8th Cir. 2018). "[T]he first step in an equal protection case is determining whether the plaintiff has demonstrated that she was treated differently than others who were similarly situated to her." *Id.*; *see*

*Vaughn*, 2019 WL 2492777, at *5 (applying same analysis to a habeas petition challenging expulsion from RDAP on equal-protection grounds). Here, while Mr. Wilson makes numerous allegations of disparate treatment on the basis of race and disability, he has not shown or sufficiently alleged that similarly situated RDAP participants were treated differently.

First, with respect to disability, Mr. Wilson only argues that he had several disabilities during the relevant times, and that the program was harder for him as a result. [*E.g.*, ECF No. 16 at 8 ("Being confused shows cognitive impairments. Struggling means that a person needs help, so staff must [have] been giving me wrong instructions purposefully to fail me.")]. Even taking that as true, he does not allege that similarly situated inmates who were not disabled were treated more favorably. This does not come close to demonstrating an equal protection violation.

With respect to racial discrimination, Mr. Wilson alleges that "Blacks are profiled and treated differently," that Black inmates are expelled from RDAP at higher rates, that there is a lack of Black counselors, and that the "system is racist, period"— among other similar assertions. [ECF No. 7 at 4–5; ECF No. 16 at 3]. These are conclusory allegations unsupported by any specific facts, which are insufficient to state an equal-protection claim. *Vaughn*, 2019 WL 2492777, at *5 n.8 (noting that vague, conclusory allegations about racial discrimination in RDAP decisions "are not enough to ground an equal-protection claim, for they cannot establish how [petitioner] was

being treated differently than others who are similarly situated in all relevant respects"). As with the petitioner in *Vaughn*, Mr. Wilson's Petition should be denied because he does not make a sufficient showing of disparate treatment to support his claim.

### C.  Reasonable Accommodation Under the Rehabilitation Act

The RA was amended in 1978 "to provide private causes of action to persons subjected to handicap discrimination by the federal government and its agencies." *Gardner v. Morris*, 752 F.2d 1271, 1277 (8th Cir. 1985). Discrimination for failure to accommodate a disability "occurs if 'a covered entity does not . . . make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business.'" *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004) (quoting 29 C.F.R. § 1630.9(a)).

Mr. Wilson argues that the BOP discriminated against him on the basis of his disability by not providing him reasonable accommodations in the RDAP program, which lead to his expulsion for failure to meet the standards. He argues that he suffered cognitive impairment resulting from a traumatic brain injury, which the BOP does not dispute, and that he therefore needed accommodations in order to meet the expectations of RDAP. Initially, the Court notes that neither party cites, and the Court

has not found, authority for the premise that a failure-to-accommodate claim under the RA applies to prisoners' participation in BOP programs enacted pursuant to §§ 3621–26, much less for whether such a claim would be a *duration*—rather than a *condition*—of confinement claim and therefore redressable on a petition for habeas corpus. Nevertheless, even assuming that the RA does require the BOP to provide accommodations to RDAP participants with disabilities and that failure to do so is proper grounds for a habeas petition, the BOP has adequately shown that the RDAP staff here did account for and accommodate Mr. Wilson's cognitive impairment. The record reflects that his treatment team adjusted certain requirements and allowed him multiple chances to meet the expectations of the program. Mr. Wilson fails to show that the BOP did not make reasonable accommodations for his known disabilities. Therefore, Mr. Wilson's Petition should also be denied as to his claims under the RA.

### III. Recommendation

Accordingly, for all of the foregoing reasons, the Court hereby **RECOMMENDS** that Mr. Wilson's Petition for Habeas Corpus [ECF No. 1] be **DENIED**.

Date: November 17, 2021   s/ *Katherine Menendez*
                          Katherine Menendez
                          United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

In this case, a party may file and serve specific written objections to the proposed findings and recommendations within **7 days** after being served a copy of the Report and Recommendation. Any party wishing to respond to those objections must do so within **3 days** after being served a copy of the objections. Please note that these are expedited deadlines and differ from those provided in Local Rule 72.2. All objections and responses must otherwise comply with the word or line limits provided in Local Rule 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 7 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 7 days after the objections are filed; or (2) from the date a timely response is filed.